In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-01-00064-CR


______________________________




THE STATE OF TEXAS, Appellant



V.



HERMEREJILDO HERNANDEZ, Appellee




 


On Appeal from the 115th Judicial District Court


Marion County, Texas


Trial Court No. F12,555




 




Before Cornelius, C.J., Grant and Ross, JJ.


Opinion by Justice Ross


Concurring Opinion by Justice Grant


O P I N I O N



 Hermerejildo Hernandez was indicted for money laundering in violation of Tex. Pen.
Code Ann. § 34.02 (Vernon 1994). The State appeals the trial court's granting of
Hernandez' motion to suppress evidence.

 On January 12, 2001, Harry Washington, a sergeant with the Ark-La-Tex Narcotics
Task Force, planned a drug interdiction of a Greyhound bus at the bus station in Atlanta,
Texas. However, the bus did not stop in Atlanta, but was subsequently pulled over by a
police officer in Jefferson, forty miles from Atlanta. Washington testified he radioed ahead
to the Jefferson Police Department and told them if they saw the driver of the bus violate
any traffic laws and the driver was stopped, he would like to do an interdiction. Donny
Vallery, of the Jefferson Police Department, testified he received a message asking if he
had seen the bus. He answered in the negative, but further testified that he later observed
the bus speeding. Vallery stopped the bus in Jefferson around 7:00 p.m. and issued the
driver a warning citation for speeding. 

 While the bus was stopped, Washington received the driver's permission to search
the bus, but testified he had no suspicion any illegal activity was occurring on the bus. 
Washington and another narcotics officer entered the bus. Both officers wore plain clothes
and their guns were not displayed. On entering the bus, they identified themselves as
peace officers and displayed their badges. 

 Washington first checked the restroom and then began questioning the passengers
at the rear of the bus. He advised the passengers he was on the bus to check for illegal
narcotics, large sums of money that derived from illegal sales of narcotics, and weapons. 
He also asked to see the driver's licenses and tickets of the passengers.

 Hernandez and his girlfriend, Norma Delacruz, were passengers on the bus. 
Washington testified that he was not suspicious of Hernandez when he began questioning
him and that Hernandez answered his questions. Washington did not tell Hernandez he
was free not to respond, nor did he tell Hernandez he could leave the bus. During their
conversation, Hernandez acknowledged he had previously been arrested for large
quantities of marihuana. Hernandez also told Washington he was headed from Memphis
to Mercedes, but his ticket was from Texarkana to Houston. 

 Washington generally asked of the passengers in Hernandez' vicinity who owned
the black bag in the overhead compartment across from Hernandez. Two passengers
nearby said they thought the bag belonged to Hernandez. Hernandez and Delacruz
denied ownership of the bag. Washington then sought to remove the bag from the bus as
abandoned property. At this point, both Hernandez and Delacruz said the bag belonged
to Hernandez. Washington and Hernandez exited the bus with the bag and then removed
the rest of Hernandez' and Delacruz' bags from the bus. After obtaining their verbal
consent, Washington searched the bags and, inside some tennis shoes, found two bundles 
containing cash in the total amount of $42,016.00.

 Washington and Vallery were the only witnesses who testified at the suppression
hearing. The trial court granted Hernandez' motion to suppress any and all tangible
evidence seized by law enforcement officers or others in connection with the detention and
arrest of Hernandez. The order granting the motion was silent as to the reasons it was
granted, and the trial court provided no findings of fact or conclusions of law.

 Generally, a trial court's ruling on a motion to suppress is reviewed by an abuse of
discretion standard. See Maddox v. State, 682 S.W.2d 563, 564 (Tex. Crim. App. 1985).
However, this case presents us with a question of law based on undisputed facts;
therefore, we apply de novo review. See Oles v. State, 993 S.W.2d 103, 106 (Tex. Crim.
App. 1999); Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

 In 1989, the United States Supreme Court held that random suspicionless
questioning of bus passengers while they were on the bus at the bus station was not a
per se violation of the passengers' Fourth Amendment rights. Florida v. Bostick, 501 U.S.
429, 439-40, 111 S.Ct. 2382, 115 L.Ed.2d 389 (1991). Bostick was arrested after two
officers entered the bus at the Fort Lauderdale bus station and proceeded without
articulable suspicion to pick out Bostick and asked to inspect his ticket and identification. 
Though everything matched, the police asked to search Bostick's bags, to which Bostick
consented. The police discovered contraband in one of Bostick's bags. Id. at 431. Bostick
contended that, because he was on the bus, he was not free to refuse consent, but the
Court held that, so long as a reasonable person would feel free "to disregard the police and
go about his business," the encounter is consensual and no reasonable suspicion is
required. Id. at 434. The encounter only triggers Fourth Amendment scrutiny if it loses its
consensual nature. Id. Mere police questioning does not constitute seizure. Id.; Terry v.
Ohio, 392 U.S. 1, 19 n.16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). 

 The main difference between Bostick and this case is that in this case the police did
not board the bus at a regularly scheduled stop, but boarded while the bus was lawfully
stopped for a traffic violation. Although a passenger may not feel free to leave a bus that
is stopped for a traffic violation, the Court in Bostick found this is not the test. The test is
not whether a passenger feels free to leave, but rather whether a reasonable person would
feel free to decline the officers' requests or otherwise terminate the encounter.  Bostick,
501 U.S. at 436. The officers are not required to advise a suspect of the right to refuse
consent to a search. Whether the officer did so advise the suspect is only one factor in
determining whether the encounter constitutes a seizure. State v. Velasquez, 994 S.W.2d
676, 679 (Tex. Crim. App. 1999).

 Hernandez contends the major difference between this case and the cases of
Bostick and Velasquez is the location of the bus when the questioning took place. He
emphasizes the fact that the bus he was on was not at a scheduled bus stop at the time
of the search and that there is a factual dispute as to what led to the driver of the bus being
stopped. It is true that the testimonies of Washington and Vallery as to Washington's role
in causing the driver of the bus to be stopped are not consistent. However, even assuming
Washington's request to Vallery was the direct cause of the driver being stopped for a
traffic violation, this fact is irrelevant so long as the driver of the bus was in fact committing
a traffic violation. Vallery's testimony that the bus was exceeding the speed limit when he
stopped the driver is undisputed. So long as the traffic violation itself constituted an
objectively reasonable basis for the stop, any ulterior motive on the part of the officers was
irrelevant. Whren v. United States, 517 U.S. 806, 810-13, 116 S.Ct. 1769, 135 L.Ed.2d 89
(1996). 

 That the officer stopping the driver of the bus was not the one who boarded the bus
and conducted the interdiction is likewise irrelevant. Again, there is no dispute Vallery
lawfully stopped the driver of the bus for speeding. Once the bus was stopped, the
narcotics task force officers approached and asked the bus driver if they could check the
bus, and the driver consented. This delayed the bus beyond the time required for writing
the warning ticket. However, it is well settled that one of the exceptions to the warrant and
probable cause requirements of the Fourth Amendment is a search conducted pursuant
to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043-44, 36
L.Ed.2d 854, 858 (1973); Carmouche v. State, 10 S.W.3d 323, 331 (Tex. Crim. App. 2000). 
Because the driver consented to the search of the bus, any delay not exceeding the scope
of that consent is not a factor.

 Hernandez contends this case falls between two United States Supreme Court
cases, Bostick and City of Indianapolis v. Edmond, 531 U.S. 32, 121 S.Ct. 447, 148
L.Ed.2d 333 (2000). He first contends it is not like Bostick, as discussed above, because
the bus was not at a regularly scheduled stop. He then contends this case is closer to the
situation in Edmond. In Edmond, the Supreme Court found the city's roadblocks were set
up to find drugs and the roadblocks were unconstitutional. "We have never approved a
checkpoint program whose primary purpose was to detect evidence of ordinary criminal
wrongdoing." Id., 531 U.S. at 41. Hernandez contends the narcotics officers in this case
established a de facto bus roadblock. In Edmond, the police were stopping the drivers of
cars going through checkpoints regardless of whether they had violated any laws. This is
not the case here; this was not a roadblock search. This was a search that occurred after
a valid stop for a traffic law violation, and it only occurred after the driver of the bus gave
consent to enter the bus. Once the driver gave the officers permission to enter the bus,
the questioning of the passengers is like the questioning of passengers aboard a bus at
a bus station. Looking at all of the circumstances surrounding the encounter, the
conversation between Washington and Hernandez was consensual.

 Hernandez contends that, if this search and seizure is upheld, the police could then
establish de facto bus roadblocks at unscheduled stops by simply stopping the driver for
any traffic law violation-no matter how slight-and then questioning the passengers,
avoiding an inquiry into their subjective intent. However, under present law, there is
nothing prohibiting law enforcement officers from stopping the driver of a passenger car
for a traffic violation, gaining the driver's consent to search the car and, in the course of
that search, questioning the passengers. Whether it is a bus or a passenger car that is
lawfully stopped for a traffic offense, the driver is free to decline granting consent to search
and the passengers are free to decline to answer questions by the police. Without consent
of the driver of a vehicle, the police may not search it without a warrant or probable cause. 
See Schneckloth, 412 U.S. at 219-22; Carmouche, 10 S.W.3d at 331. 

 Whether a seizure occurs depends on the totality of the circumstances surrounding
the encounter. Bostick, 501 U.S. at 437; Velasquez, 994 S.W.2d at 679. In this case, the
police lawfully stopped the driver of the bus for a traffic violation and gained lawful consent
to enter the bus. Once on the bus, the evidence presented indicates the police did not
intimidate the passengers. They were in plain clothes, and their guns were not showing. 
That Washington did not tell Hernandez he did not have to cooperate is just one factor in
determining whether the encounter constituted a seizure. Velasquez, 994 S.W.2d at 679. 
Only Washington interviewed Hernandez, and there is no evidence showing he in any way
prevented Hernandez from disregarding him or intimidated Hernandez into answering the
questions. Hernandez did not testify at the hearing on the motion to suppress and did not
call any witnesses to testify that what occurred on the bus was different from that related
by Washington. 

 The stopping of the driver of the bus was lawful, the officers entered the bus with
the driver's consent, Hernandez answered Washington's questions, and he consented to
the officers' search of his bags. No Fourth Amendment violation has been shown. 

 We sustain the State's point of error. The trial court erred in granting the motion
to suppress. We reverse and remand for further proceedings.



 Donald R. Ross

 Justice



 CONCURRING OPINION



 The undisputed evidence offered at the suppression hearing indicates that the
search of the bus was consensual. No evidence was offered to show that the consent by
the bus driver and Hernandez were brought about by intimidation.

 A defendant can testify at a suppression hearing on the limited matter of the search
without waiving his Fifth Amendment right. A defendant cannot be made to give up one
constitutional right in order to serve another.  Crosson v. State, 36 S.W.3d 642 (Tex.
App.-Houston [1st Dist.] 2000, no pet.). Thus, Hernandez was not prevented from offering
testimony concerning the search and consent at the suppression hearing.


 Ben Z. Grant

 Justice


Date Submitted: November 8, 2001

Date Decided: November 30, 2001


Publish



Name="Medium Grid 1 Accent 5"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 












 
 
 
 
 
 
 




 

 

 

 

 

 

 

 

 

                                                         In
The

                                                Court
of Appeals

                        Sixth
Appellate District of Texas at Texarkana

 

                                                ______________________________

 

                                                             No. 06-09-00181-CR

                                                ______________________________

 

 

                                 JEFFERY WAYNE WORTH,
Appellant

 

                                                                V.

 

                                     THE STATE OF TEXAS, Appellee

 

 

                                                                                                  


 

 

                                        On Appeal from the 71st Judicial District Court

                                                           Harrison County, Texas

                                                         Trial Court
No. 09-0127X

 

                                                     
                                             

 

 

 

                                          Before Morriss, C.J.,
Carter and Moseley, JJ.

                                        Memorandum Opinion by Chief Justice Morriss








                                                      MEMORANDUM OPINION

 

            Jeffery
Wayne Worth pled guilty to two indictments of aggravated robbery with a deadly
weapon containing enhancement charges.[1]  After a hearing on punishment, the trial
court sentenced Worth to thirty years concurrent imprisonment in both
causes.  Worth appeals the trial courts
judgments on the sole ground that he was not properly admonished that
deportation could result if he was not an American citizen.  We affirm the trial courts judgments because
Worth was admonished of potential deportation for non-American citizens in
writing, and the record contains evidence that Worth is a United States
citizen.[2]


            Before
accepting a guilty plea, a trial court is required to admonish a defendant that
deportation can result if he or she is not a citizen of the United States of
America.  Tex. Code Crim. Proc. Ann. art. 26.13(a)(4) (Vernon Supp.
2009).  The court may make the
admonitions required by this article either orally or in writing.  Tex.
Code Crim. Proc. Ann. art. 26.13(d) (Vernon Supp. 2009).  

            In both cause numbers, the
trial court provided Worth with written felony admonishments stating, [i]f the
Defendant is not a citizen of the United States of America, a plea of guilty or
nolo contendere for the offense charges may result in deportation, the
exclusion from admission to this country, or the denial of naturalization under
federal law.  Worth and his counsel
signed the written admonishments, and they were admitted by the court before
entry of the guilty pleas.  Worth also
told the court he was a United States citizen.[3]  Thus, we find Worths complaint on appeal to
be without merit. 

            The
trial courts judgment in cause number 06-09-00181-CR is affirmed. 

 

                                                                                    Josh
R. Morriss, III

                                                                                    Chief
Justice

 

Date Submitted:          February
1, 2010

Date Decided:             February
2, 2010

 

Do Not Publish           

 

 

 

 











[1]Worth
appeals from this cause number and judgment entered in cause number
06-09-00182-CR.  

 





[2]Generally,
as a prerequisite to presenting a complaint for our review, a defendant is
required to make a complaint to the trial court below by a timely request,
objection, or motion.  Tex. R. App. P. 33.1.  Worth
did not complain to the trial court about the alleged failure to admonish or
the voluntariness of his guilty pleas either before or after his sentencing,
including in his motions for new trial.  However,
the Texas Court of Criminal Appeals has made clear that a defendant can raise
challenges based on a courts failure to admonish for the first time on appeal
unless affirmatively waived.  Bessey v. State, 239 S.W.3d 809, 812
(Tex. 2007).   

 





[3]Even
had the trial court failed to admonish Worth, failure to admonish would be
harmless if Worth was a United States citizen. 
Vannortrick v. State, 227
S.W.3d 706, 709 (Tex. Crim. App. 2007).