**Ronald C. CARMOUCHE, Appellant,**

v.

**The STATE of Texas.**

**No. 0614–99.**

Court of Criminal Appeals of Texas.

Jan. 26, 2000.

---

2. *Id.*

Ronald C. Carmouche, pro se.

Albert J. Charanza, Jr., Assist. DA, Lufkin, Matthew Paul, State's Atty., Austin, for the State.

## OPINION

MEYERS, J., delivered the opinion of a unanimous Court.

Appellant was convicted by a jury of the offense of possession of a controlled substance, sentenced to twenty years confinement and assessed a $10,000 fine. *See* TEX. HEALTH & SAFETY CODE ANN. § 481.115 (Vernon 1992 & Supp 1999). The Ninth Court of Appeals affirmed appellant's conviction. *Carmouche v. State*, 989 S.W.2d 392 (Tex.App.—Beaumont 1999). We granted appellant's *pro se* petition to review whether the appellate court erred in affirming the trial court's decision to admit evidence allegedly obtained in violation of the Fourth Amendment to the United States Constitution and Article I, section 9 of the Texas Constitution.[1]

### I.

On August 1, 1996, a police informant telephoned Sergeant Ricky Allen, a narcotics investigator with the Texas Department of Public Safety ("D.P.S."). Sergeant Allen recognized the informant from a previous investigation, wherein she had provided accurate information about at least eight of her co-defendants in a pending federal drug conspiracy case. In the phone call, the informant told Allen that she and appellant were planning on driving from Houston to Nacogdoches later that evening and that appellant would be carrying approximately ten ounces of cocaine. The informant further advised Allen that appellant was renting the car and had refused to tell her any descriptive details. Allen therefore asked the informant to stop at a specific gas station in Corrigan, Texas, so that officers could identify the vehicle.

Allen set up surveillance at the Corrigan gas station with Texas Ranger Dwayne Williams and Lt. Allen Alexander. At approximately 8:25 p.m., the informant and appellant pulled into the gas station driving a green Toyota Camry. When the Camry left the gas station, the officers followed the car to the Lufkin city limits in two unmarked vehicles. There, they radioed a description of the car to Trooper Kervin Largent, who was waiting in the highway median in a marked D.P.S. unit.[2]

Largent followed the Camry, and eventually pulled the car over when he observed a traffic violation.[3] Meanwhile, the two unmarked cars, along with two additional police units, turned around and stopped on the opposite side of the highway. At least two uniformed Lufkin police officers also arrived at the site of the stop to assist Largent. Largent approached the Camry and asked the informant and appellant to get out of the car.[4] After

1. Appellant's argument under Article I, section 9 is limited to the consent to search issue. *See infra*, Part V. With regards to the remaining issues, wherein appellant does not provide argument or authority that the Texas Constitution is more comprehensive than its federal counterpart, we will limit our analysis to the Fourth Amendment's protections. *See Muniz v. State*, 851 S.W.2d 238, 251 (Tex.Crim.App. 1993); *Heitman v. State*, 815 S.W.2d 681, 690 n. 20 (Tex.Crim.App.1991).

2. Largent had been advised of the situation in a meeting of law enforcement personnel approximately one hour earlier.

3. Largent later testified that the "purpose of ... waiting for a traffic violation ... was a ruse ... to protect [the informant's] identity."

4. The entire traffic stop was videotaped by means of a camera mounted on Largent's patrol car. The tape was presented to the judge at the suppression hearing and admitted into evidence before the jury. We have

separating the two individuals, Largent asked and received consent to search the Camry. While Largent searched the interior of the car, the informant told a DPS communications operator who was riding with Largent to search appellant's person. The operator relayed this information to Largent, who conducted a pat-down of appellant and found more than nineteen-hundred dollars in appellant's front pocket. Finding no contraband on appellant, Largent radioed Williams and Allen to inform them that he had been unsuccessful in locating any narcotics. Largent then began to search the trunk of the car.

While Largent was searching the trunk, Williams crossed the highway to the site of the stop. When he arrived, he was told by the informant that appellant had placed the cocaine in his pants. Williams, accompanied by the three other officers, then walked up to appellant and asked if he could search him. Appellant stated that he had already been searched by Largent. Williams testified that he responded by asking, "Do you mind if I search you again?" Williams further testified that appellant then threw his hands up, said, "All right," and turned around and placed his hands on the car. There is some conflict, however, between Williams' trial testimony and the videotape of the stop. These conflicts will be addressed more fully below. It is clear, however, that Williams then reached for the crotch area of appellant's pants and recovered a package containing approximately 253 grams of powder cocaine. At no time did the police obtain a warrant to search appellant or the car.

At both a pretrial suppression hearing and at trial, appellant sought to have the money and cocaine suppressed for lack of probable cause. The trial court declined to suppress any of the evidence. At the Court of Appeals, appellant argued that this ruling was error. Specifically, appellant argued that the facts neither warranted the investigative stop nor the continued detention after Largent's initial search.

reviewed the videotape as part of the appel-

Appellant also argued that the facts did not rise to the level of probable cause to search appellant.

Relying on *Terry v. Ohio,* 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) and *Davis v. State,* 829 S.W.2d 218 (Tex.Crim. App.1992), the Court of Appeals concluded that the police were reasonably justified in stopping appellant's vehicle. *Carmouche,* 989 S.W.2d at 394. The appellate court also determined that Largent's initial pat down was justified as a *Terry* frisk "[b]ecause Largent had reasonable suspicion to believe that Carmouche was involved in criminal activity." *Id.* Finally, the lower court concluded that appellant had consented to the search that ultimately revealed the narcotics:

> In the present case, Ranger Williams testified during trial and during the motion to suppress hearing that Carmouche consented to the second pat down. Carmouche did not put on any evidence contradicting Ranger Williams' opinion. Consequently, the trial court could have found that Carmouche consented to the second pat down.

*Id.* at 394–95. The court also found that the period of time appellant was detained prior to his arrest was not so unreasonable as to violate any of appellant's constitutional rights. *Id.* at 395.

## II.

■ The appropriate standard for reviewing a trial court's ruling on a motion to suppress evidence was articulated in *Guzman v. State,* 955 S.W.2d 85 (Tex.Crim. App.1997). In that Fourth Amendment case, the Court indicated that it would apply a bifurcated standard of review, giving "almost total deference to a trial court's determination of historical facts" and reviewing *de novo* the court's application of the law of search and seizure. *Id.* at 88–89.

■ In the case at bar, the trial court did not make explicit findings of historical

late record.

fact. We therefore review the evidence in a light most favorable to the trial court's ruling. *See State v. Ballard*, 987 S.W.2d 889 (Tex.Crim.App.1999); *State v. Munoz*, 991 S.W.2d 818, 821 (Tex.Crim.App.1999). In other words, we will assume that the trial court made implicit findings of fact supported in the record that buttress its conclusion. We will review *de novo* the lower court's application of the relevant Fourth Amendment standards. *Guzman*, 955 S.W.2d at 89.

### III.

■ A "stop" and "frisk" by law enforcement personnel amounts to a sufficient intrusion on an individual's privacy to implicate the Fourth Amendment's protections. *See United States v. Brignoni–Ponce*, 422 U.S. 873, 878, 95 S.Ct. 2574, 2579, 45 L.Ed.2d 607 (1975); *Terry v. Ohio*, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). Nevertheless, under an exception to the warrant requirement, an officer is generally justified in briefly detaining an individual on less than probable cause for the purposes of investigating possibly-criminal behavior where the officer can "point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant [the] intrusion." *Terry*, 392 U.S. at 21, 88 S.Ct. at 1880; *see also Davis v. State*, 947 S.W.2d 240, 244 (Tex.Crim. App.1997) ("Texas courts require reasonable suspicion before a seizure of the person or property can occur"). The information provoking the officer's suspicions need not be based on his own personal observations, but may be based on an informant's tip which bears sufficient "indicia of reliability" to justify a stop. *See Adams v. Williams*, 407 U.S. 143, 146–47, 92 S.Ct. 1921, 1923–24, 32 L.Ed.2d 612 (1972).[5]

The same standards will apply whether the person detained is a pedestrian or is the occupant of an automobile. *See id.* at 145–46, 92 S.Ct. at 1922–23; *Shaffer v. State*, 562 S.W.2d 853, 855 (Tex.Crim.App.1978).

■ We conclude that the warrantless stop of the Camry was constitutionally justified based upon the informant's tip that appellant was transporting cocaine, her previous history of providing reliable information to authorities and the events at the gas station which served to corroborate her information.[6] Appellant argues that the informant's descriptions were too vague to justify a stop. He emphasizes that the only physical description the informant gave police was that appellant was a black male with "sleepy" looking eyes and that he would be driving a rental car of an unknown make. However, appellant's argument fails to account for how this information was incorporated into the whole picture. The Supreme Court has emphasized that whatever terms are used to describe the "elusive concept" of what cause is sufficient to authorize a *Terry* stop, "the essence of all that has been written is that the totality of the circumstances—the whole picture—must be taken into account." *United States v. Cortez*, 449 U.S. 411, 417, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981); *see also Alabama v. White*, 496 U.S. 325, 328–29, 110 S.Ct. 2412, 2415, 110 L.Ed.2d 301 (1990) (using "totality of the circumstances" test to determine whether informant's anonymous tip supplied reasonable suspicion for stop); *Woods v. State*, 956 S.W.2d 33, 38 (Tex. Crim.App.1997) (noting that determination of reasonable suspicion is subject to totality of the circumstances analysis). While the informant's description of appellant *by*

---

**5.** In *Adams*, such "indicia" was shown by evidence that (1) the informant was known to the officer personally; (2) the informant had provided the officer with information in the past; and (3) the informant may have been subject to arrest for making a false complaint had the officer's investigation proved the tip incorrect. *Id.*

**6.** Largent was also justified in stopping the Camry once he observed a violation of the traffic laws. *See Whren v. United States*, 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996).

*itself* was imprecise, all of the surrounding circumstances, taken together, justified the stop. The fact that the informant provided reliable information in the past, arrived at the time and place she had indicated and was accompanied by an individual matching the description she had given police, provided the officers with sufficient corroborating evidence to give rise to "reasonable suspicion" of appellant under *Terry.*

## IV.

We turn next to the validity of the initial pat-down search of appellant by Largent. That search uncovered some nineteen-hundred seventy-one dollars in U.S. currency located in the front pocket of appellant's shorts. At trial, Largent was permitted to testify regarding the discovery of the money. The Court of Appeals found no error in admitting the evidence, determining that Largent discovered the money pursuant to a valid *Terry* frisk, based on the fact that he had "reasonable suspicion to believe that Carmouche was involved in criminal activity." *Carmouche,* 989 S.W.2d at 394.

 Law enforcement personnel may conduct a limited search for weapons of a suspect's outer clothing, even in the absence of probable cause, where an officer reasonably believes that the suspect is armed and dangerous. *See Terry,* 392 U.S. at 27, 88 S.Ct. at 1883; *Davis v. State,* 829 S.W.2d 218, 220 (Tex.Crim.App. 1992). However, "[t]he purpose of a limited search after [an] investigatory stop is not to discover evidence of a crime, but to allow the peace officer to pursue investigation without fear of violence." *Wood v. State,* 515 S.W.2d 300, 306 (Tex.Crim.App. 1974).

 By stating that Largent's pat-down search was justified because he had "reasonable suspicion to believe that Carmouche was involved in criminal activity," *Carmouche,* 989 S.W.2d at 394, the Court of Appeals improperly conflated the legal standard justifying the initial stop with the legal authority to do the "frisk." *Terry* and its progeny have carefully distinguished the two and emphasized the different justifications for each. A brief investigative *detention* is authorized once an officer has a reasonable suspicion to believe that an individual is involved in criminal activity. *See infra,* Part III. However, the "exigencies" which permit the additional *search* are generated strictly by a concern for the safety of the officers. *See Terry,* 392 U.S. at 25–26, 88 S.Ct. at 1882; *see also id.* at 29, 88 S.Ct. at 1884 ("The sole justification of the search in the present situation is the protection of the police officer and others nearby, and it must therefore be confined in scope to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer"). In this vein, the additional intrusion that accompanies a *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon. *Terry,* 392 U.S. at 26–27, 88 S.Ct. at 1882–83; *Worthey v. State,* 805 S.W.2d 435, 438 (Tex.Crim.App.1991).

Appellant urges that Largent was impermissibly looking for cocaine rather than for weapons when he instigated the pat-down search. Appellant points out that Largent searched appellant only after he had removed appellant from the car, unsuccessfully searched the interior of the vehicle and was told by the informant that the drugs were located on appellant's person. During the course of cross-examination, Largent admitted that the search was motivated in part by a desire to search for the narcotics, but also asserted that he wanted to ensure that appellant was not armed:

[DEFENSE COUNSEL]: But you weren't concerned at that very moment about your protection, you had two officers with weapons—

[TROOPER LARGENT]: Well, Counselor, like I say, I'm always concerned

because things happen and they happen quick.

[DEFENSE COUNSEL]: But when you told Mr. Carmouche that you were doing it for your protection, you really weren't, you were doing it so you could see if he had any contraband on his person; right?

[TROOPER LARGENT]: I was doing it for protection, checking him also for the narcotics, both.

Based on this testimony, appellant urges us to hold that Largent was not constitutionally justified in conducting the pat-down search.

 Judging the evidence in a light most favorable to the trial court's ruling, the evidence supports a finding that Largent was concerned for his safety when he conducted the frisk. Moreover, such a belief was objectively reasonable in light of the circumstances. First, we note that "roadside encounters between police and suspects are especially hazardous." *Michigan v. Long*, 463 U.S. 1032, 1049, 103 S.Ct. 3469, 3481, 77 L.Ed.2d 1201 (1983). More importantly, the *Terry* Court suggested that a police officer's reasonable belief that a suspect is armed and dangerous may be predicated on the nature of the suspected criminal activity. *See Terry*, 392 U.S. at 27–28, 88 S.Ct. at 1868 (finding officers could reasonably assume that offense of robbery would involve use of weapons, although officer did not observe a weapon or any physical indication of a weapon).

In the instant case, Largent stopped appellant pursuant to an articulable suspicion that appellant was trafficking in cocaine. Based on this limited knowledge of appellant's suspected activities, the officers justifiably approached appellant with caution. It was not unreasonable to conduct a limited search for weapons in these circumstances. "Since weapons and violence are frequently associated with drug transactions, the officers reasonably believed that the individual[ ] with whom they were dealing [was] armed and dangerous."

*United States v. Brown*, 913 F.2d 570, 572 (8th Cir.1990) (citing *United States v. Oates*, 560 F.2d 45, 62 (2d Cir.1977)); *see also United States v. Trullo*, 809 F.2d 108, 113 (1st Cir.1987) (determining that frisk of narcotics suspect justified because "concealed weapons were part and parcel for the drug trade"); *United States v. Post*, 607 F.2d 847, 851 (9th Cir.1979) ("It is not unreasonable to suspect a dealer in narcotics might be armed"). We therefore hold that Largent was constitutionally justified in patting-down appellant for weapons.

 Having concluded that the frisk was justified at the outset, we now turn to the extent of the search. Appellant argues that by reaching into his pocket and recovering the money, Largent exceeded the scope of his authority under *Terry*. It is true that "[i]f the protective search goes beyond what is necessary to determine if the suspect is armed, it is no longer valid under *Terry* and its fruits will be suppressed." *Minnesota v. Dickerson*, 508 U.S. 366, 373, 113 S.Ct. 2130, 2136, 124 L.Ed.2d 334 (1993) (citing *Sibron v. State of New York* 392 U.S. 40 at 65–66, 88 S.Ct. 1889 at 1904 20 L.Ed.2d 917. However, the Supreme Court has held that "[i]f a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons." *Id.* at 375, 113 S.Ct. at 2137. If an officer is legitimately conducting a *Terry* frisk, no additional privacy interest is implicated by the seizure of an item whose identity is already plainly known through the officer's sense of touch. *Id.* at 377, 113 S.Ct. at 2138.

 In the case at bar, Largent testified on cross-examination that he immediately recognized the bulge in appellant's pocket as money. The seizure of the money, therefore, fell within *Dickerson*'s "plain feel" exception to the Fourth Amendment's warrant requirement. No

privacy interest in addition to that already implicated by the *Terry* frisk was infringed upon when Largent withdrew what he already knew was money from appellant's pocket. We therefore hold that the scope of the search was reasonable and the trial court properly admitted Largent's testimony.

## V.

The next issue presented is whether Williams' subsequent search of appellant, which revealed the narcotics, was justified under the "consent" exception to the probable cause requirements of our state and federal constitutions. The State argues that appellant freely consented to the search, relying on Williams' trial testimony:

> [RANGER WILLIAMS]: So when I walked— I went from there and walked up to Mr. Carmouche and asked him if he had any narcotics— or I asked him if I could search him. He looked over toward the trooper and said— pointed to him and said, "Well, he's already searched me."
>
> I said, "Do you mind if I search you again?"
>
> He threw his hands up, said, "All right." Turned around, put his hands on the car. I reached around to the crotch area where [the informant] told me it was at.

Appellant maintains that he made no gesture that could be construed as an indication of consent. Appellant also argues that even if we found some action on his part that might be taken as affirmative consent, that consent was not given voluntarily, but was instead a submission to an overwhelming display of police authority.

▮ Consent to search is one of the well-established exceptions to the constitutional requirements of both a warrant and probable cause. *Schneckloth v. Busta-monte*, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043–44, 36 L.Ed.2d 854 (1973); *State v. Ibarra*, 953 S.W.2d 242, 243 (Tex.Crim. App.1997). "The Fourth Amendment test

for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances.'" *Ohio v. Robinette*, 519 U.S. 33, 40, 117 S.Ct. 417, 421, 136 L.Ed.2d 347 (1996) (quoting *Schneckloth*, 412 U.S. at 248–49, 93 S.Ct. at 2059). In order to be valid, the consent must "not be coerced, by explicit or implicit means, by implied threat or covert force." *Schneckloth*, 412 U.S. at 228, 93 S.Ct. at 2048; *see also Allridge v. State*, 850 S.W.2d 471, 493 (Tex.Crim.App.1991) ("The consent must be shown to be positive and unequivocal, and there must not be any duress or coercion") (citation omitted). By the same token, consent is not established by "showing no more than acquiescence to a claim of lawful authority." *Bumper v. North Carolina*, 391 U.S. 543, 548, 88 S.Ct. 1788, 1792, 20 L.Ed.2d 797 (1968) (where officer falsely represented he had a valid search warrant, consent not voluntary).

▮ Although the federal constitution only requires the State to prove the voluntariness of consent by a preponderance of the evidence, the Texas Constitution requires the State to show by clear and convincing evidence that the consent was freely given. *Ibarra*, 953 S.W.2d at 245. If the record supports a finding by clear and convincing evidence that consent to search was free and voluntary, we will not disturb that finding. *See Johnson v. State*, 803 S.W.2d 272, 287 (Tex.Crim.App. 1990), *overruled on other grounds, Heitman v. State*, 815 S.W.2d 681, 685 (Tex. Crim.App.1991).

We begin with the observation that the videotape from the patrol car's camera does not support the testimony of Ranger Williams. Specifically, the critical seconds of the tape surrounding the time of appellant's "consent" show a different sequence of events than what Williams described at trial. Moments before the crucial exchange, appellant can be seen sitting or leaning on the hood of the Camry. Two

uniformed Lufkin police officers are standing nearby—one officer is standing roughly six feet in front of appellant while the other is positioned in front of the car and to appellant's left. At this point, Williams and Largent walk into the right side of the frame and up to appellant. Williams stands directly in front of appellant, approximately two or three feet away. Largent stands to Williams' immediate left and the Lufkin officer steps in on Williams' immediate right. The other Lufkin officer, although largely obscured by the car, can be seen briefly to appellant's immediate left. Thus, appellant was closely surrounded by the four officers and was standing with his back to the car.

At this point the sound from Largent's microphone, which apparently had been turned off, comes back on. The conversation between the men, although somewhat garbled by background noise from the highway, then becomes audible. Appellant can be heard, in mid-sentence, saying "... searched me."[7] A second voice, although faint, can then be heard saying, "Turn around and put your hands on the car." Appellant can then be seen standing up and complying with the order. Only after appellant has raised his hands, turned around and faced the car, can Williams be heard asking, "Mind if I pat you down again?" Williams' "request" to search is made *as* he is reaching for the crotch area of appellant's pants. Moreover, no oral response from appellant is audible on the tape. In fact, the next voice heard is Williams, presumably as he finds the drugs, saying, "What you got here?"

This section of the videotape belies Williams' testimony that appellant raised his hands and turned around in response to Williams' request to search. The tape does not support a conclusion that appellant made these gestures as an indication of consent. Indeed, appellant turned around and assumed a position to facilitate the search after he was ordered to do so

by one of the officers. Williams' "request" came after officers had appellant spread-eagled beside his car.

■ *Guzman* states that, "as a general rule, the appellate courts, including this Court, should give almost total deference to a trial court's determination of the historical facts that the record supports especially when the trial court's findings are based on an evaluation of credibility and demeanor." *Guzman,* 955 S.W.2d at 89 (citation omitted). In the unique circumstances of this case, however, we decline to give "almost total deference" to the trial court's implicit findings under which the Court of Appeals found consent. First, we note that the trial court seems to have predicated its decision to admit the evidence on a finding of probable cause rather than on consent. Second, the nature of the evidence presented in the videotape does not pivot "on an evaluation of credibility and demeanor." Rather, the videotape presents indisputable visual evidence contradicting essential portions of Williams' testimony. In these narrow circumstances, we cannot blind ourselves to the videotape evidence simply because Williams' testimony may, by itself, be read to support the Court of Appeals' holding.

■ We hold that the record does not support the Court of Appeals' finding of clear and convincing evidence that appellant's consent, if given at all, was free and voluntary. On the side of a darkened highway, appellant was closely surrounded by four police officers who had him backed up against the hood of his car. Officers told appellant to turn around and put his hands on the car. Only after appellant had assumed such position, and as he was reaching for appellant's pants, did Williams "ask," "Mind if I pat you down again?" Moreover, appellant was never told during this exchange that he had a right to refuse consent. *See Schneckloth,* 412 U.S. at 248–49, 93 S.Ct. at 2059 (al-

---

7. This is consistent with Williams' testimony that appellant responded to Williams' initial request to search by saying, "he's already searched me."

though not dispositive, subject's knowledge of right to refuse consent is one factor to be taken into account when considering voluntariness). Finally, appellant had already been searched once *involuntarily* during the earlier *Terry* frisk. Taken together with all of the other circumstances, this could have led a reasonable person to conclude that the second search, like the previous one, was not optional.

 We hold that under these circumstances a reasonable person would not have felt they had the choice to withhold consent to search. Thus, consent was not given voluntarily and the search may not be justified on that basis. In making this conclusion, we are mindful that while most confrontations with the police are uncomfortable—given the implicit difficulty in refusing any request from a peace officer who stands cloaked in the authority of law enforcement—"the Constitution does not guarantee freedom from discomfort." *State v. Velasquez*, 994 S.W.2d 676, 679 (Tex.Crim.App.1999). Indeed, the Constitution presumes that an actor is invested with a vibrant sense of his own constitutional rights and will assert those rights when they are implicated. Nevertheless, after careful scrutiny of the evidence presented in this case, we hold that the record does not support a finding of free and voluntary consent.

## VI.

The Court of Appeals erred in concluding that appellant voluntarily granted consent to search. The judgment of the appellate court is vacated and the case remanded for that court to consider the State's alternative theory that the search was supported by probable cause.[8]

---

8. The State raised this theory in the Court of Appeals, but the issue was not reached be-

cause of the appellate court's holding that appellant granted voluntary consent.