# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00187-CR

**The State of Texas, Appellant**

**v.**

**Grady Kenton Coldiron, Appellee**

### FROM THE COUNTY COURT OF MILAM COUNTY
### NO. CR26,486, HONORABLE FRANK SUMMERS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The State appeals from the trial court=s orders granting appellee Grady Kenton Coldiron=s motions to suppress evidence. *See* Tex. Code Crim. Proc. Ann. art. 44.01(a)(5) (West Supp. 2004). Because we conclude that the State=s arguments were not preserved for appeal or are otherwise foreclosed, we affirm the suppression orders.

After being accused by information of driving while intoxicated, Coldiron filed motions to suppress: (1) his refusal to submit to a breath or blood test; (2) statements he made to the police; (3) audio and visual portions of a videotape; and (4) the officers= observations and opinions. Although the motions recited several grounds for suppression, the only ground addressed at the hearing on the motions was the contention that the challenged evidence was tainted by an unlawful warrantless arrest.

Deputy Philip Agnelli testified that he responded to a report of an accident on a county road in rural Milam County at 2:00 a.m. on August 6, 2000. He saw that one vehicle, a Mitsubishi Montero, had left the road, crashed through a fence, rolled over, and come to a stop in a field. A second vehicle, a Ford pickup truck, was parked in front of the Mitsubishi as if to pull it out of the field. The only person present was Coldiron.

Agnelli spoke to Coldiron and immediately noticed the smell of alcoholic beverage on his breath. Coldiron told the deputy that his wife had been driving the Mitsubishi at the time of the accident, that she was now at their home, and that he had returned in the pickup to pull her vehicle out of the field. Coldiron accompanied Agnelli to the Coldiron residence, which was only about 400 yards from the accident scene. Mrs. Coldiron came outside and agreed to return to the scene to be examined by EMS technicians.

Meanwhile, Department of Public Safety Trooper Ernest Del Bosque had also arrived at the accident scene. Mrs. Coldiron told Del Bosque that she and her husband had been driving home separately, she in the Mitsubishi and he following her in the pickup truck. Coldiron initially denied driving, but later admitted that he had been following his wife as she described. Coldiron also told the trooper that he had been drinking. Del Bosque administered field sobriety tests to Coldiron; the results indicated that he was intoxicated. At this time, Del Bosque arrested Coldiron for driving while intoxicated and advised him of his rights. Later, at the jail, Coldiron refused to provide a breath sample.

2

In her argument to the court at the conclusion of the hearing, the prosecutor urged that the motions to suppress be overruled because the officers had probable cause to arrest Coldiron for driving while intoxicated:

> I think it=s . . . apparent from all the testimony that both officers were conducting an investigation of an accident to begin with, which later on led into the DWI investigation of both drivers. Both officers testified that they did not see the defendant driving; however, both were told by the defendant and Trooper Del Bosque was also told by the defendant=s wife that he was indeed following in the car.

> And there was evidence that he may have been driving from the fact that both vehicles were there when Deputy Agnelli arrived and only one person was present; and additionally, when Trooper Del Bosque arrived, there were three vehicles and two people present. So it was very apparent to both officers that someone must have driven the other vehicles, and that Mr. Coldiron, by his own admission, was the person that had done so.

> . . .

> The trooper, based on all of the evidence from the field sobriety tests, all of that, the clues indicating intoxication, made the arrest based on those tests and on the fact that, by his own admission and the circumstances surrounding the situation that he came upon, Mr. Coldiron had been driving the vehicle while he was intoxicated.

In response, defense counsel referred the court to code of criminal procedure article 14.01:

> Judge, I think the bottom line . . . is we=ve got an illegal arrest here. He should have gotten a warrant. I think that the evidence might show that they had probable cause to arrest for public intoxication. I think that=s what the case law is going to show. But under Article 14 of the Code of Criminal Procedure, they=ve got to go out and get a warrant unless an offense is committed within their view.

> Here are troopers and the deputy; no one saw Mr. Coldiron operating a motor vehicle while intoxicated. So it=s not a felony, it=s really no evidence of a suspicious place. So none of the exceptions to the rule that you need an arrest warrant, and it=s a warrantless arrest C none of those exceptions are met. So I think the arrest cannot stand up and the

3

case fails as a matter of law because there=s no evidence to show that an arrest was allowed without a warrant.

*See* Tex. Code Crim. Proc. Ann. art. 14.01(b) (West 1977) (officer may arrest without warrant for any offense committed in his presence or within his view). The trial court later signed written orders granting the motions to suppress without express findings of fact or conclusions of law.

In its brief to this Court, the State effectively concedes that Coldiron could not be arrested without a warrant for driving while intoxicated because he did not commit that offense in the presence or view of either officer. The State argues, however, that the officers had probable cause to believe that Coldiron was guilty of public intoxication, an offense he was committing in their presence, and that the warrantless arrest was lawful for that reason. *See Elliott v. State*, 908 S.W.2d 590, 592 (Tex. App.CAustin 1995, pet. ref=d). This argument is not properly before us because it was not made by the State in the trial court. The ordinary notions of procedural default apply equally to the defendant and the State. *State v. Mercado*, 972 S.W.2d 75, 78 (Tex. Crim. App. 1998). The basic appellate principle that points not argued at trial are deemed waived applies to the State when it is the appellant. *Id*.

There is another reason why the trial court=s orders must be affirmed. When, as in this cause, a trial court does not make explicit findings of fact when ruling on a motion to suppress evidence, it must be assumed on appeal that the court made implicit findings of fact supported by the record that buttress its conclusions. *Carmouche v. State*, 10 S.W.3d 323, 327-28 (Tex. Crim. App. 2000). The appellate court may not in such a case adopt a legal theory that leads to reversal if there is a viable legal theory that supports the trial court=s ruling. *State v. Ross*, 32 S.W.3d 853, 858 (Tex. Crim. App. 2000).

4

If, as the State argues, the uncontradicted testimony shows that the officers had probable cause to arrest Coldiron for public intoxication, and even if this theory had been presented to the court at the hearing below, we may not assume that the trial court granted the motions to suppress because it erroneously applied the law to the facts. *Id*. Instead, we must assume that the trial court granted the motions to suppress because it did not credit the officers= testimony. *Id*. at 859.

The State=s brief also addresses the merits of the other grounds contained in Coldiron=s motions to suppress. None of these grounds were raised at the suppression hearing and there is no basis in the record for concluding that the trial court relied on them in granting the motions. For the reasons stated above, we will not reverse the court=s orders by assuming that it erroneously relied on one of these alternative grounds for suppression.

The orders granting the motions to suppress are affirmed.

_____

Jan P. Patterson, Justice

Before Chief Justice Law, Justices B. A. Smith and Patterson

Affirmed

Filed: February 20, 2004

Do Not Publish

5