COURT OF APPEALS
SECOND DISTRICT OF TEXAS
FORT WORTH
 
NO. 2-04-226-CR
  
  
REGINALD FULTON                                                               APPELLANT
  
V.
  
THE STATE OF TEXAS                                                                  STATE
 
 
------------
 
FROM THE 371ST 
DISTRICT COURT OF TARRANT COUNTY
 
------------
 
MEMORANDUM OPINION[1]
 
------------
        Appellant 
Reginald Fulton pled guilty pursuant to a plea bargain to the offense of 
possession of cocaine of less than one gram and was sentenced to five years’ 
confinement in the Institutional Division of the Texas Department of Criminal 
Justice. As part of the agreement, Appellant retained the right to appeal from 
the trial court’s denial of his motion to suppress evidence.
        In 
his sole issue, Appellant contends that the trial court erred in denying his 
motion to suppress evidence. He argues that the trial court erred because the 
State did not prove by clear and convincing evidence that (1) Appellant 
committed a violation of the transportation code; (2) the arrest was not 
complete at the time of the initial stop; (3) any consent to search was 
voluntary; and (4) any consent to search was not mere acquiescence to authority. 
Thus, Appellant challenges both the initial stop and the validity of 
Appellant’s consent to the search of his person.
        According 
to the testimony of the arresting officer, Officer White, one night in March, at 
around 7:10 p.m., Officer White saw Appellant riding his bicycle without a light 
on an unlit road in the Lake Como area of Fort Worth. Documents prepared by 
Officer White showed the time as 7:00, 7:10, and 7:15 p.m. The officer estimated 
that it had gotten dark at around 6:30 that night. Appellant’s trial counsel 
stated that sunset occurred at 6:29 p.m. and “about 6:30.” In his motion to 
suppress, Appellant’s counsel provided, “the National Weather Service 
records reflect that sunset on March 16, 2003 was at 6:29 p.m.” Officer White 
testified that the location of the stop is a high crime area where drugs are 
sold. The officer stopped Appellant for operating a bicycle at nighttime without 
a headlight. No light was mounted on the handlebars.
        After 
Appellant stopped, Officer White approached him, explained why he stopped him, 
and asked for identification. Appellant did not have identification, so Officer 
White asked his name and birth date. Appellant responded that his name was 
Willie Fulton and gave a birth date. The officer could not locate any Texas 
identification card or driver’s license on the mobile computer matching the 
name and birth date given by Appellant. Meanwhile, two backup officers arrived. 
Appellant continued to maintain that he was Willie Fulton and to give the same 
birth date. The officer stated that Appellant had a nervous demeanor and was 
constantly looking around. He also tried several times to stand beside the 
officer instead of in front of him, despite the officer’s instructions. The 
officer then asked Appellant if he had anything illegal on his person; Appellant 
stated that he did not.
        Officer 
White testified that he asked if he could search Appellant, and Appellant said, 
“Yes.” Appellant then turned around and slightly raised his arms. The 
officer stated that he never threatened or promised Appellant anything to get 
his consent to search. At the time Appellant gave consent, Officer White was 
probably two to three feet away from Appellant, another officer was standing 
behind Officer White, and a third officer was on the other side of the street, 
in front and to the left of Officer White, about ten to fifteen feet away from 
Appellant. Officer White found two pieces of an off-white rocklike substance in 
two small blue plastic baggies in Appellant’s front right pocket. Officer 
White confiscated the evidence and arrested Appellant.
        Officer 
Hernandez, one of the backup officers, testified that when he arrived on the 
scene, Officer White had stopped Appellant. Officer Hernandez did not see 
Appellant riding the bicycle. He corroborated Officer White’s testimony that 
the bike had no headlight and that Appellant was acting very nervous. He stated 
that Appellant was looking over both his shoulders as Officer White was running 
his information on the computer. Officer Hernandez testified that Officer White 
asked Appellant, “Do you mind if I search you?”. Appellant replied, “No, I 
don’t have a problem with that,” and was turning around and spreading his 
legs before he even answered. Officer Hernandez did not threaten Appellant, nor 
did he see or hear Officer White threaten or coerce Appellant, or make any 
promises to him, to get him to consent to the search.
        Appellant’s 
friend, Guy Gould, testified that he first saw Appellant at around 6:00 or 6:30 
p.m., pushing his bicycle. Gould joined him, walking down the street. He 
testified that it was still daylight when Officer White stopped Appellant. He 
also testified that after Officer White requested permission to search, 
Appellant stated, “I ain’t got nothing to hide,” and “You can search if 
you need to, but you won’t find nothing.” On redirect by Appellant’s 
counsel, Gould testified that he had provided in his written statement that the 
officer searched Appellant without permission, and further testified that the 
search had been “without [Appellant’s] okay.”
        Appellant 
testified that he was not riding his bicycle at the time he saw Gould or Officer 
White and that he did not consent to the search. He also admitted that he had a 
parole violation at the time of the stop and had given Officer White the wrong 
name.
        After 
the hearing, the trial court found:
  
[Appellant] was stopped for not having a light on his bike. He acted nervous in 
a high crime area, gave a false name to the police officers, that [Appellant] 
gave permission to search his person, and that no threats or promises were made, 
and that the — during the search, cocaine was found in his pocket.
   
 
        The 
appropriate standard for reviewing a trial court’s ruling on a motion to 
suppress evidence is a bifurcated standard of review, giving almost total 
deference to the trial court’s determination of historical facts and reviewing 
de novo the court’s application of the law to those facts.[2]  
If the trial court did not make explicit findings of historical facts, the 
appellate court reviews the evidence in a light most favorable to the trial 
court’s ruling, making the assumption that the trial court made explicit 
findings of fact, supported in the record, that buttressed its conclusion.[3]
        Section 
551.104(b) of the Texas Transportation Code provides:
   
(b) A person may not operate a bicycle at nighttime unless the bicycle is 
equipped with:
 
(1) a lamp on the front of the 
bicycle that emits a white light visible from a distance of at least 500 feet in 
front of the bicycle.[4]
  
 
Nighttime has been defined as 
anytime between thirty minutes after sunset and thirty minutes before sunrise.[5]  Applying the appropriate standard of review, we hold 
that Appellant was lawfully stopped for violating section 551.104 of the Texas 
Transportation Code.
        Regarding 
the consent issue, we note that the trial court as fact finder is the sole judge 
of the credibility of the witnesses and the weight to be given their testimony.[6]  Applying the appropriate standard of review, we 
hold that Appellant’s consent to search his person was voluntary. Because the 
trial court properly concluded that the stop and search were lawful, the trial 
court did not abuse its discretion in denying Appellant’s motion to suppress. 
We overrule Appellant’s sole issue and affirm the trial court’s judgment.
   
  
                                                                  PER 
CURIAM
    
PANEL F:   DAUPHINOT, 
J.; CAYCE, C.J.; and LIVINGSTON, J.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
 
DELIVERED: December 23, 2004


NOTES
1.  
See Tex. R. App. P. 47.4.
2.  
Carmouche v. State, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); Guzman 
v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).
3.  
Carmouche, 10 S.W.3d at 327-28; Guzman, 955 S.W.2d at 89.
4. 
 Tex. Transp. Code Ann. § 551.104 
(Vernon Supp. 2004-05).
5.  
Wilson v. State, 103 Tex. Crim. 403, 281 S.W. 844, 847 (Tex. Crim. App. 
1926).
6.  
State v. Ross, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).