Jeffrey William Cissell v. The State of Texas

COURT OF APPEALS

SECOND DISTRICT OF TEXAS

FORT WORTH

NO. 2-04-141-CR

JEFFERY WILLIAM CISSELL APPELLANT

V.

THE STATE OF TEXAS STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 3 OF TARRANT COUNTY

------------

MEMORANDUM OPINION
(footnote: 1)

------------

Appellant Jeffery William Cissell was convicted by a jury of sexual assault of a child, and the trial court sentenced him to twenty years’ confinement in the Institutional Division of the Texas Department of Criminal Justice.  The trial court certified Appellant’s right to appeal.  In one point, Appellant contends that the trial court erred when it denied his motion to suppress any oral and written statements as well as fruits of his arrest and detention.  Because we hold that the trial court correctly denied Appellant’s motion to suppress, we affirm the trial court’s judgment.

Joey Branch, a Wills Point police officer at the time these events took place, testified that he patrolled the town flea market as part of his routine duties.  He noticed that Appellant had two jet skis for sale in his booth and questioned him about their provenance.  Appellant claimed that he had gotten the jet skis for free.  Branch attempted to find out via his radio whether the jet skis had been reported stolen.  He left the flea market unable to make that determination.

Joe Carter, a game warden with the Texas Parks and Wildlife Department, overheard the radio communications and contacted Branch to offer his Department’s database.  Branch and Carter later returned to the flea market to question Appellant further about the jet skis.  During the conversation, they discovered that Appellant also had a boat for sale at the flea market.  The three men went outside to look at the boat.  At the boat, Carter asked Appellant if he had a vehicle at the flea market.  When Appellant pointed to his van, Carter asked to search it, and Appellant consented.  During the search, the officers found lingerie, children’s clothing, camera equipment, and a video camera with a videotape in it.  Branch asked to view the tape, and Appellant consented.  The tape had footage of a local parade and images of a woman breastfeeding an infant.  Carter asked Appellant if he had other tapes and where they were.  Appellant replied that he had around one hundred, at his house in Arlington and at his lake house near the flea market.  He denied that they depicted children.

He consented to the officers viewing the tapes at the lake house and rode with Branch to the lake house, sitting freely in the front passenger seat.  While viewing the tapes and photos at the lake house, the officers discovered photos and videos of females that they suspected were under the age of eighteen.  They contacted the Van Zandt County Sheriff’s Department, and two deputies were sent to the scene.  They read Appellant the statutory warnings.  Appellant then consented to Branch’s seizure of all the tapes and photos for further investigation.  He was not arrested at this time.

Back at the station, the police discovered as they reviewed the evidence that one of the tapes depicted the sexual assault of a female minor.  Appellant was then arrested for possession of child pornography.  Later, as the police continued to review the evidence, they discovered another video and photos of Appellant sexually assaulting the complainant in the case before us.  After Appellant gave the police a written statement detailing the incident, the police were able to locate the complainant in Fort Worth, Texas.

Regarding the searches of the van and lake house, the trial court made the following findings and conclusions:

On August 3rd of 2002, when [Appellant] was contacted by Joey Branch and Officer Carter, the Defendant was not in custody and not under arrest. [Appellant] was not threatened, forced or promised anything, and he voluntarily consented to the search of his vehicle and his residence which was located on County Road 3714 in Van Zandt County.

The appropriate standard for reviewing a trial court’s ruling on a motion to suppress evidence is a bifurcated standard of review, giving almost total deference to the trial court’s determination of historical facts and reviewing de novo the court’s application of the law to those facts.
(footnote: 2)  If the trial court did not make explicit findings of historical facts, the appellate court reviews the evidence in a light most favorable to the trial court’s ruling, making the assumption that the trial court made explicit findings of fact, supported in the record, that buttressed its conclusion.
(footnote: 3)
 In determining whether a consent is valid, the Texas Court of Criminal Appeals has held,

In 
Schneckloth v. Bustamonte
,[
(footnote: 4)] the United States Supreme Court considered the definition of “voluntary consent” in the context of a search and seizure. “When the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied.”  The Court noted that “voluntariness” goes beyond the literal meaning of “a knowing choice.”  Unless a person is unconscious or incapacitated, all statements made could be considered “voluntary in the sense of representing a choice of alternatives.”  Under this view, even physically-forced consent would be voluntary because, in theory, the suspect had a choice—either consent to the search or be beaten.  On the other hand, we do not ask whether the consent would have been given “but-for” the police actions or inquiries.  Under this view, “virtually no statement would be voluntary because very few people give incriminating statements in the absence of official action of some kind.”  Therefore, the premise of voluntariness does not mean that police are required to never question an accused in custody, but they must have limits to the measures taken during their interrogations.

“In determining whether a defendant's will was overborne in a particular case,” the 
Schneckloth
 Court developed the standard by which consent is tested for voluntariness.  Trial courts “must [assess] the totality of all the surrounding circumstances--both the characteristics of the accused and the details of the interrogation.” By looking at the circumstances leading up to the search, the reaction of the accused to pressure, and any other factor deemed relevant, a trial court can determine whether the statement of consent was given voluntarily.  Some relevant factors the Supreme Court has taken into consideration in past cases are:  the youth of the accused, the education of the accused, the intelligence of the accused, the constitutional advice given to the accused, the length of the detention, the repetitiveness of the questioning, and the use of physical punishment.

The Texas Constitution protects the people against all unreasonable seizures and searches.  A search made after voluntary consent is not unreasonable.  In determining whether a defendant's consent was voluntary, the State is required to prove the voluntariness of consent by clear and convincing evidence.  This Court has held that the trial court must look at the totality of the circumstances surrounding the statement of consent in order to determine whether that consent was given voluntarily.
(footnote: 5) 

The trial court as fact finder is the sole judge of the credibility of the witnesses and the weight to be given their testimony.
(footnote: 6) 

Appellant argues that his consent to the search and seizure of the evidence from his van and lake house was involuntary because he was merely  acquiescing to the officers’ show of authority—they were armed.  He further argues that the alleged taint stained his confession.  Based on our review of the record, there was no evidence that Appellant was young, naive, or mentally deficient.  While there was no testimony that Branch or Carter told Appellant that he did not have to consent to the search of his van or home, there was also no testimony that the officers threatened, coerced, or forced Appellant to consent, and there was evidence to the contrary.  There was no evidence that his will was overborne.  Based on the applicable standard of review, we hold that the State proved by clear and convincing evidence that Appellant’s consent was voluntary, that the searches of the van and lake house, and the resulting seizure of evidence, were therefore legal, and that the trial court properly denied Appellant’s motion to suppress.

Consequently, we overrule Appellant’s sole point and affirm the trial court’s judgment.

PER CURIAM

PANEL F: DAUPHINOT, HOLMAN and GARDNER, JJ.

DO NOT PUBLISH

Tex. R. App. P.
 47.2(b)

DELIVERED:  January 27, 2005

FOOTNOTES
1:
See
 
Tex. R. App. P.
 47.4.

2:
Carmouche v. State
, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); 
Guzman v. State
, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

3:
Carmouche
, 10 S.W.3d at 327-28; 
Guzman
, 955 S.W.2d at 89.

4:
412 U.S. 218, 93 S. Ct. 2041 (1973).

5:
Reasor v. State
, 
12 S.W.3d 813, 817-18 (Tex. Crim. App. 2000) (citations omitted).

6:
State v. Ross
, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000).