**Opinion issued October 13, 2016**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-15-00753-CR

————————————

**PHILIP JOSHUA SMITH, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Case No. 14CR3572**

---

## MEMORANDUM OPINION

Police officers responded to a report of suspicious activity outside a home-improvement retail store and found Philip Smith with two weapons in his truck. They conducted a *Terry* frisk[1] and detained him to investigate criminal activity.

---

[1]   *See Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868 (1968).

During the detention, they discovered methamphetamine and arrested him. At the time, Smith was on community supervision for a continuous-assault charge.[2]

The State sought to adjudicate his guilt. The trial court found it true that Smith had violated his community-supervision terms, adjudicated his guilt on the assault offense, sentenced him to five years' confinement for that offense, suspended the sentence, and placed him on community supervision for five years.

In three issues, Smith challenges the reasonableness of the officers' tactics that led to the discovery of narcotics and the adjudication of his guilt. We understand his arguments to challenge the trial court's consideration at the adjudication hearing of evidence obtained during the *Terry* detention. The State analyzes these issues as a challenge to the denial of a motion to suppress. We do the same and affirm.

**Background**

In April 2015, Smith pleaded guilty to felony continuous assault of a family member causing bodily injury. The trial court deferred adjudication of his guilt and placed him on community supervision for four years. The terms of his community supervision included abstaining from the use or possession of drugs without a doctor's order and not committing any criminal acts.

---

[2]    *See* TEX. PENAL CODE ANN. § 25.11 (establishing offense for assaulting a family member two or more times within a 12-month period).

One month later, Galveston Police officers were dispatched to a home-improvement retail store to investigate a report of suspicious circumstances. It had been reported that a person was wandering the parking lot for several hours, peering into cars, and pulling on door handles. The police arrived around 10:00 p.m. and found Smith standing next to his truck in a near-empty parking lot.

Officer G. Martinez asked Smith for his identification. When Smith opened the door of his truck to retrieve his wallet, Martinez saw an ax and another knife in the passenger area of the truck. He asked Smith to walk to the rear of the truck "so that we were away from the weapons for officer safety issues." There, Martinez noticed various tools in the bed of the truck and also noticed that Smith's license plate was turned backward, making the license plate number unreadable. When asked why his license plate was turned backward, Smith stated that he did not want people to draw on it. Martinez described Smith as "extremely fidgety" during the questioning.

Officer R. Driver testified that Smith "appeared very, very nervous" and was hesitant to answer the officers' questions. When he did answer, he "kept changing his story." Additionally, Driver found Smith's license plate explanation "suspicious."

After observing Smith's demeanor, noting inconsistencies in his story, and seeing weapons in his truck, Martinez asked Smith if he had a weapon on him.

3

Smith said he "probably had a pocket knife." Martinez conducted a search of Smith's outer clothing for weapons—a *Terry* frisk. When he patted Smith's shorts pocket, he felt a "knife-like object," which he reached in and removed from Smith's pocket. The object was a syringe with a clear residue in the cylinder but without a needle attached. The officers asked Smith for his consent to search his truck; Smith denied consent.

At that point, the officers detained Smith in one of their patrol cars, requested a K9 unit to conduct an open-air dog sniff near Smith's truck, and began checking serial numbers on the tools in the bed of Smith's truck to investigate whether they had been reported stolen. As they continued their investigation, the officers asked Smith additional questions, and he revealed that he "used to shoot dope."

Officer B. Patton arrived with a dog certified in narcotics detection. The dog alerted to the driver's-side door of Smith's truck, providing probable cause to search the truck. When the officers searched Smith's truck, they found a bottle cap in the ashtray that had a substance in it, later confirmed to be methamphetamine, and additional needleless syringes.

Smith was arrested. The State asserted that possession of methamphetamine violated the terms of his community supervision, and it moved to adjudicate his guilt on the one-month-earlier continuous-assault charge.

4

At the adjudication hearing, Smith testified that he walked to the store to meet his wife, who had his truck. When he got there, around 1:00 p.m. in the afternoon, she was no longer there. While at the store, he lost his key to the truck. He testified that he spent the next eight or nine hours looking for his key and "kind of window shopping more or less."

According to Smith, the syringe in his pocket was a Tylenol liquid-medicine dropper that was incapable of being attached to a needle or used to inject methamphetamine. He testified that he and his two sons would use these droppers "as water guns from time to time just horsing around in the backyard." He also denied that the drugs found in his truck were his, asserting instead that they must have been his wife's.

Throughout the hearing, Smith argued that the detention and search were without reasonable suspicion and, therefore, unjustified. The State responded that the presence of weapons in the truck combined with Smith's statement that he probably had a knife supported the *Terry* frisk to search for the knife, and the syringe and statements about prior drug use provided reasonable suspicion to continue what began as a theft investigation as a narcotics investigation.

The trial court found that it was a "good search" and that Smith had violated his probation. The court adjudicated Smith guilty of felony continuous assault of a

family member and announced a sentence of five years' confinement, but the court then suspended the sentence and placed Smith on probation for five years.

Smith appeals the adjudication of his guilt, arguing that the police tactics that led to discovery of methamphetamine in his truck were unreasonable and unwarranted. We affirm.

**Motion to Suppress**

Smith argues that the police's tactics were unreasonable and unjustified because (1) the officers did not have a reasonable suspicion that he was engaged in criminal activity, (2) the officers did not believe that Smith was dangerous, and (3) the dog sniff that led to the discovery of methamphetamine in Smith's truck was not related to the purpose of the original detention or based on facts that would support a reasonable suspicion of criminal activity. The State's brief responds to these issues as a challenge to the denial of a motion to suppress evidence. Although the record does not contain a written motion to suppress evidence, we note a discussion with the trial court at the adjudication hearing about the legality of the detention and search and a finding by the trial court that the search was legal. We, therefore, will proceed with our analysis as a challenge to the denial of a motion to suppress evidence.

### A.  Standard of review

In reviewing a trial court's ruling on a motion to suppress evidence, we apply a bifurcated standard of review. *See Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000). We view the evidence in the light most favorable to the trial court's ruling and give "almost total deference" to the trial court's determinations of historical facts and rulings on mixed questions of law and fact that depend on an evaluation of credibility or demeanor. *Gonzales v. State*, 369 S.W.3d 851, 854 (Tex. Crim. App. 2012); *Carmouche*, 10 S.W.3d at 327. We apply a de novo standard of review to the application of search and seizure law and to mixed questions of law and fact that do not depend on credibility or demeanor. *Gonzales*, 369 S.W.3d at 854; *Carmouche*, 10 S.W.3d at 327.

### B.  Challenge to the *Terry* detention

Smith contends that his detention was unreasonable because the officers had no reasonable suspicion that he was engaged in criminal activity. Specifically, he points to Officer Driver's testimony that Smith was not detained and was, instead, free to leave until the police actually found the narcotics in his truck. According to Smith, if he was not detained, then the officers must not have had a reasonable suspicion that he was involved in criminal activity and, therefore, were unjustified in continuing the encounter.

A law enforcement officer is generally justified in conducting a brief detention of an individual to investigate possible criminal behavior—a *Terry* detention—if the officer can point to specific and articulable facts, which, taken together with rational inferences from those facts, reasonably warrant the intrusion on the individual's privacy. *See Terry v. Ohio*, 392 U.S. 1, 21, 88 S. Ct. 1868, 1880 (1968); *Carmouche*, 10 S.W.3d at 328. Reasonable suspicion exists if the facts and the rational inferences from those facts, "would lead him to reasonably conclude that a particular person actually is, has been, or soon will be engaged in criminal activity." *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005).

Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch.'" *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883. It requires that information be "sufficiently detailed and reliable . . . to suggest that something of an apparently criminal nature is brewing"; however, the facts and inferences do not have to be specific or concrete enough to suggest that a "particular and identifiable penal code offense is imminent." *Derichsweiler v. State*, 348 S.W.3d 906, 917 (Tex. Crim. App. 2011).

Courts review the totality of the circumstances when determining whether a police officer has reasonable suspicion. *United States v. Sokolow*, 490 U.S. 1, 8, 109 S. Ct. 1581, 1585 (1989); *Ford*, 158 S.W.3d at 492–93. We judge the reasonableness of a police officer's actions from the perspective of a reasonable

officer at the scene without the advantage of hindsight. *Rhodes v. State*, 945 S.W.2d 115, 118 (Tex. Crim. App. 1997).

Officer Driver testified that he received a dispatch call at 9:45 p.m. to investigate "suspicious circumstances" at a home-improvement retail store in Galveston. He was told that someone was pulling on car door handles in the parking lot. When he arrived, he saw Smith next to his truck. Smith was "hesitant" to answer his questions. Driver noticed that Smith's license plate was turned backward so that it was not readable. He asked Smith about this, and Smith paused before stating that he had turned it backward because he did not want people to draw on his license plate. Smith quickly unscrewed the license plate from its holder and replaced it correctly. Driver testified that he thought this behavior, Smith's explanation of why the license plate was turned backward, and Smith's "body language and the way he was talking" were "suspicious." But, when asked at the adjudication hearing whether Smith was being detained during this phase of the encounter, Driver testified that Smith was free to leave until the point that the officers found methamphetamine in his car.

Officer Martinez testified that he was dispatched to the store because someone had been in the parking lot for a long time looking into vehicles. When he arrived and began talking to Smith, Martinez saw an ax and another knife in Smith's truck. He asked Smith what he was doing in the parking lot, and Smith

9

"kept changing his story." According to Martinez, who has more experience with the police department than Driver: "[Smith] was being detained the whole time as part of our investigation into . . . the original call, which was a theft or a suspicious person in the parking lot."

While Martinez was investigating a possibility of a theft crime, he conducted a *Terry* frisk of Smith, which revealed a syringe. As Martinez continued investigating whether there had been a theft, Smith disclosed his drug history. According to Martinez, the found syringe and the disclosed drug history led to Smith's further detention for the officers to conduct a "narcotic investigation." *See Haas v. State*, 172 S.W.3d 42, 52 (Tex. App.—Waco 2005, pet. ref'd) ("Additional facts and information discovered by an officer during a lawful detention may form the basis for a reasonable suspicion that another offense has been or is being committed."); *Mohmed v. State*, 977 S.W.2d 624, 628 (Tex. App.—Fort Worth 1998, pet. ref'd). Martinez confirmed that "throughout the whole investigation, [Smith] was detained."

Based on Martinez's testimony and the totality of the circumstances, the trial court could have reasonably concluded that Smith was detained, the facts supported the officers' reasonable suspicion that Smith was engaged in criminal activity, and his detention was justified. *See Derichsweiler*, 348 S.W.3d at 917; *Ford*, 158 S.W.3d at 492.

10

We overrule Smith's second issue.

## C. Challenge to the *Terry* frisk

Smith also argues that the *Terry* frisk conducted by police officers to search for weapons was unreasonable because the officers only articulated their belief that he was armed, without also articulating a belief that he was dangerous.

A *Terry* frisk is a limited search of a suspect's outer clothing for guns, knives, clubs, or other items capable of being used to assault a police officer; the procedure enables police officers to ensure that a suspect does not have a weapon so that they may pursue their investigation without fear of violence. *Carmouche*, 10 S.W.3d at 329 (discussing *Terry*, 392 U.S. 1, 88 S. Ct. 1868). "[A] *Terry* frisk is only justified where the officer can point to specific and articulable facts which reasonably lead him to conclude that the suspect might possess a weapon." *Id.*

If an officer discovers that a suspect has at least one weapon, he is justified in conducting a *Terry* frisk for additional weapons. *E.g.*, *O'Hara v. State*, 27 S.W.3d 548, 553–54 (Tex. Crim. App. 2000) (although officer could not pat-down suspect as matter of routine procedure, he was justified in conducting pat-down for additional weapons after discovering one weapon).

This is an objective test, not a subjective one. *Id.* at 551. "The officer need not be absolutely certain that the individual is armed; the issue is whether a

11

reasonably prudent man in the circumstances would be warranted in the belief that his safety or that of others was in danger." *Terry*, 392 U.S. at 27, 88 S. Ct. at 1883.

Officer Martinez saw two weapons in Smith's truck. Martinez testified that he asked Smith to move to the rear of the truck "so that we were away from the weapons for officer safety issues." He described Smith as "extremely fidgety" and "very, very nervous." Martinez then asked Smith if he had a weapon on him, and Smith said he "probably had a pocket knife." After receiving information from Smith that he probably had a weapon on him, the officers conducted the *Terry* frisk.

Smith argues that these facts do not justify a pat-down because the officers did not "voice a particularized suspicion they had concerning their safety" or their perceptions of his dangerousness. This argument was rejected in *O'Hara*. There, the defendant argued that his *Terry* frisk was invalid because the officers did not testify that they were afraid of him or that they felt he was a danger. 27 S.W.3d at 551. The Court of Criminal Appeals held that the issue of whether an officer is justified in conducting a *Terry* frisk is analyzed using an objective test, not a subjective one. *Id.* Therefore, an officer's testimony regarding his subjective level of fear is irrelevant. *Id.*; *see Walter v. State*, 28 S.W.3d 538, 542 (Tex. Crim. App. 2000) (stating that "a police officer's subjective motive will never invalidate objectively justifiable behavior under the Fourth Amendment").

The relevant inquiry is whether a reasonably prudent officer in the circumstances would be warranted in the belief that the suspect "might possess a weapon." *Carmouche*, 10 S.W.3d at 329 (citing *Terry*, 392 U.S. at 26–27, 88 S. Ct. at 1882–83). We conclude that the officers pointed to specific and articulable facts to support the *Terry* frisk, including their testimony about Smith's demeanor, their awareness that Smith carried weapons because he had two in his vehicle, and Smith's statement that he probably had a knife on him as well. Martinez testified that these facts led him to conduct a *Terry* frisk for the officers' safety. This evidence, when viewed in the light most favorable to the trial court's finding and using an objective standard, would warrant a reasonable officer to believe that the person had a weapon and, therefore, justified a *Terry* frisk to search for that weapon. *See id.*

We overrule Smith's first issue.

## D. Reasonableness of dog sniff

In his third issue, Smith argues that his detention was unreasonable because the syringe found in his pocket did not support reasonable suspicion of drug-related criminal activity and the dog sniff was unrelated to the purpose of the original detention.

### 1. Prolonging a *Terry* investigative detention

An investigative detention must not last longer than is reasonably necessary to effectuate the encounter's purpose. *See Florida v. Royer*, 460 U.S. 491, 500, 103 S. Ct. 1319, 1325 (1983). Once the reason for the investigative detention has been satisfied, officers may not use the detention as a "fishing expedition for unrelated criminal activity." *Davis v. State*, 947 S.W.2d 240, 243 (Tex. Crim. App. 1997) (quoting *Ohio v. Robinette*, 519 U.S. 33, 41, 117 S. Ct. 417, 422 (1996) (Ginsburg, J., concurring)). However, there are circumstances that will justify a prolonged encounter.

An officer may extend the encounter through a request for consent to search a vehicle if the request is reasonable under the totality of the circumstances and the officer has not indicated that the person being investigated is required to consent. *Haas*, 172 S.W.3d at 52; *Simpson v. State*, 29 S.W.3d 324, 328 (Tex. App.— Houston [14th Dist.] 2000, pet. ref'd). If the request is denied, the investigative detention may continue, nonetheless, if the officer develops reasonable suspicion that another offense has been or is being committed before resolving the initial suspicious matter. *Haas*, 172 S.W.3d at 52; *see Razo v. State*, 577 S.W.2d 709, 711 (Tex. Crim. App. [Panel Op.] 1979) (stating that any articulable facts and circumstances that come into officer's knowledge during justified detention may justify further investigation).

## 2. Whether the syringe found in Smith's pocket supported a reasonable suspicion of criminal activity

The *Terry* frisk revealed an item in Smith's pocket. At the revocation hearing, the officers described the item as a syringe with a "clear-like" residue visible inside the cylinder. This finding led Officer Martinez to suspect drug-related offenses and to ask Smith for consent to search his truck. When Smith refused, Martinez called for the K9 unit to conduct an open-air dog sniff.

At the hearing, Smith argued that the syringe found in his pocket—which was neither tested to determine its content nor retained as evidence—was simply a Tylenol medicine dropper like those typically used to medicate children. He argues that there was "no reason for the officers to suspect the oral medication syringe was used for methamphetamine or another illegal substance other than the officer's ignorance about such syringes," or, stated differently, because the officers did not know what the item actually was, they did not have a valid basis for suspecting criminal activity. We disagree.

First, we note that the standard for continuing a detention is the same as that for the initial detention: "reasonable suspicion," not the more demanding probable-cause standard. *See Mohmed*, 977 S.W.2d at 628 (concluding that continued detention was justified because officer obtained information during traffic stop that raised reasonable suspicion of drug offense unrelated to original traffic offense). Second, we review reasonableness using an objective standard. *Terry*, 392 U.S. at

15

21–22, 88 S. Ct. at 1880. The objective standard asks whether the facts available to the officers at the moment of detention would warrant a person of reasonable caution in having the belief that the action taken was appropriate, considering the totality of the circumstances. *Id.*

The evidence did not establish whether the item in Smith's pocket was a Tylenol dropper or a syringe capable of use with narcotics. But what it actually turned out to be is irrelevant under the objective standard of reasonableness that applies. *See id.*; *Mohmed*, 977 S.W.2d at 628. Officers Driver and Martinez testified that the item appeared to them to be a syringe. According to Martinez, based on his training and experience, syringes "can be used for shooting dope [or] methamphetamine." The syringe had a visible residue inside. Martinez testified that he believed the residue was methamphetamine. The officers asked Smith why he had a syringe in his pocket, and, according to Martinez, Smith replied that he just put his shorts on without realizing it was in there. Martinez testified that his explanation seemed "unlikely."

We conclude that the discovery of the syringe reasonably could have contributed to the officers' suspicion of criminal activity, despite Smith's unsubstantiated claim at the adjudication hearing that the syringe was only a child's Tylenol dispenser.

The record demonstrates that the officers were still investigating the possibility of theft-based criminal activity when the facts supporting their suspicion of drug-related criminal activity were revealed, including the syringe and Smith's disclosure of a history of drug use. After finding the syringe, Martinez processed each of the tools in the bed of Smith's truck, checking the serial numbers to determine whether they had been stolen from the home-improvement retail store or possibly other vehicles in the parking lot. It was during this active theft investigation that Smith disclosed that he had a history of drug use.

Thus, the syringe and Smith's prior-drug-use disclosure were specific, articulable facts disclosed to the officers during their theft investigation that supported their reasonable suspicion of a drug-related offense. *See Haas*, 172 S.W.3d at 52–54; *Powell v. State*, 5 S.W.3d 369, 378–79 (Tex. App.—Texarkana 1999, pet. ref'd) (prolonged detention permissible because officer's reasonable suspicion developed while investigating different possible criminal activity). These findings, along with Smith's nervousness, delayed answers, changing story, and other circumstances, supported Martinez's reasonable suspicion that a drug offense had occurred or was occurring and further supported Smith's prolonged detainment to conduct an open-air dog sniff. *Haas*, 172 S.W.3d at 54.

We have found that the prolonged detention was reasonable. Once the dog arrived and alerted to the scent of narcotics, the officers had probable cause to

search Smith's vehicle without a warrant. *Harrison v. State*, 7 S.W.3d 309, 311 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd). In the truck, they found methamphetamine and additional syringes, which led to his arrest.

We overrule Smith's third issue, challenging the basis for the dog sniff.

## Conclusion

Seeing no error in the trial court's consideration of evidence adduced during the *Terry* frisk and detention, we affirm the judgment adjudicating guilt.


Harvey Brown
Justice

Panel consists of Justices Jennings, Keyes, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).