

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 2-07-135-CR

LUIS JESUS DE-LOS-SANTOS, JR.                                           APPELLANT

V.

THE STATE OF TEXAS                                                            STATE

------------

FROM THE 89TH DISTRICT COURT OF WICHITA COUNTY

------------

## MEMORANDUM OPINION[1]
## ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

------------

Pursuant to Texas Rule of Appellate Procedure 50, we withdraw our November 1, 2007 opinion and judgment and substitute the following. *See* TEX. R. APP. P. 50. We write to address appellant Luis Jesus De-Los-Santos's claim on petition for discretionary review that we erroneously gave too much deference to the findings and conclusions made by the trial court after the

---

[1] *See* TEX. R. APP. P. 47.4.

suppression hearing in light of the purportedly contrary evidence on the video tape of the stop.  On original submission, we ordered that the video tape of the stop be forwarded to this court.  We received it and reviewed it.  But De-Los-Santos argues on petition for discretionary review that a seperate "enhanced video" of the stop prepared by a defense expert (Defendant's Exhibit 1) purportedly shows that the rear license plate lights on De-Los-Santos's vehicle were clearly working properly.[2]  Consequently, on petition for discretionary review ordered this additional video forwarded to us.  We have reviewed it, and it is identical to the video of the stop introduced by the State, State's Exhibit 1.  To the extent any enhancement techniques were utilized in or presented to the trial court, none are present or observable on Defendant's Exhibit 1.  Accordingly, our opinion, as set forth below, remains unchanged.

## I. INTRODUCTION

Appellant Luis Jesus De-Los-Santos appeals his conviction for driving while intoxicated with a child passenger under the age of fifteen.  In one issue, De-Los-Santos challenges the trial court's denial of his motion to suppress.  We will affirm.

---

[2] No video or DVD was included in the record filed with this court.

## II. FACTUAL AND PROCEDURAL BACKGROUND

On the night of May 19, 2006, Officer Patrick McFerrin was stopped at a stop sign while on traffic patrol when he observed a vehicle drive past him with one of its two rear license plate tag lights not working. Believing that a traffic violation was being committed, Officer McFerrin pulled over the vehicle and made contact with De-Los-Santos, the driver. Because Officer McFerrin detected the odor of alcohol coming from De-Los-Santos, Officer McFerrin administered field sobriety tests, all of which De-Los-Santos failed. Officer McFerrin then arrested De-Los-Santos for driving while intoxicated (DWI).

After arresting De-Los-Santos, Officer McFerrin allowed Shay Wylie, who was a passenger and the vehicle's owner, to drive the vehicle home. Because two of the vehicle's passengers were toddlers, the State indicted De-Los-Santos for DWI with a child passenger under the age of fifteen.

De-Los-Santos filed a motion to suppress. The motion argued that the trial court should suppress all of the evidence obtained during the traffic stop because the stop constituted an unlawful, warrantless search based on neither probable cause nor reasonable suspicion. The trial court heard the testimony of three witnesses at the suppression hearing. First, Officer McFerrin unwaveringly testified that one of the two tag lights was not working when he initiated the traffic stop. Second, Wylie testified that both of the rear license

3

plate tag lights were operating correctly before and after the stop. Third, a videographer, who studied the recording made by the camera on board Officer McFerrin's cruiser, testified that both of the license plate tag lights were on while Wylie drove the car away after the arrest.

Based on this testimony, the trial court found that Officer McFerrin had reasonable suspicion to initiate the traffic stop, and the trial court signed a written order denying the motion to suppress. De-Los-Santos subsequently pleaded guilty and gave notice of his intent to appeal the denial of the motion to suppress. Upon De-Los-Santos's request, the trial court made findings of fact and conclusions of law. De-Los-Santos now appeals.

### III. STANDARD OF REVIEW

We review a trial court's ruling on a motion to suppress evidence under a bifurcated standard of review. *Carmouche v. State*, 10 S.W.3d 323, 327 (Tex. Crim. App. 2000); *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997). In reviewing the trial court's decision, we do not engage in our own factual review. *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990); *Best v. State*, 118 S.W.3d 857, 861 (Tex. App.—Fort Worth 2003, no pet.). The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *State v. Ross*, 32 S.W.3d 853, 855 (Tex. Crim. App. 2000); *State v. Ballard*, 987 S.W.2d 889,

4

891 (Tex. Crim. App. 1999). Therefore, we give almost total deference to the trial court's rulings on (1) questions of historical fact, even if the trial court's determination of those facts was not based on an evaluation of credibility and demeanor, and (2) application-of-law-to-fact questions that turn on an evaluation of credibility and demeanor. *Montanez v. State*, 195 S.W.3d 101, 108–09 (Tex. Crim. App. 2006); *Johnson v. State*, 68 S.W.3d 644, 652–53 (Tex. Crim. App. 2002); *State v. Ballman*, 157 S.W.3d 65, 68 (Tex. App.—Fort Worth 2004, pet. ref'd). But when the trial court's rulings do not turn on the credibility and demeanor of the witnesses, we review de novo a trial court's rulings on mixed questions of law and fact. *Estrada v. State*, 154 S.W.3d 604, 607 (Tex. Crim. App. 2005); *Johnson*, 68 S.W.3d at 652–53.

Stated another way, when reviewing the trial court's ruling on a motion to suppress, we must view the evidence in the light most favorable to the trial court's ruling. *State v. Kelly*, 204 S.W.3d 808, 818 (Tex. Crim. App. 2006). When the trial court makes explicit fact findings, we determine whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports those fact findings. *Id*. at 818–19. We then review the trial court's legal ruling de novo unless its explicit fact findings that are supported by the record are also dispositive of the legal ruling. *Id*. at 819.

**IV. THE CONSTITUTIONALITY OF THE TRAFFIC STOP UNDER THE FOURTH AMENDMENT**

In his sole issue, De-Los-Santos contends that the trial court improperly denied his motion to suppress because Officer McFerrin's initial stop violated the Fourth Amendment. Specifically, De-Los-Santos argues that because Officer McFerrin only had a brief opportunity to view the rear license plate tag lights and because he did not take any steps to verify the traffic violation before stopping De-Los-Santos, Officer McFerrin's suspicion was not formed from inferences based on articulable facts but was rather based on a mere hunch. Therefore, because a stop based on a hunch rather than articulable facts violates the Fourth Amendment, De-Los-Santos concludes that his constitutional rights were violated—a violation which the trial court should have cured by granting his motion to suppress evidence seized as a result of the stop. *See Williams v. State*, 621 S.W.2d 609, 612 (Tex. Crim. App. 1981) (panel op.).

**A. The Requirements of a Constitutional Traffic Stop**

6

The Fourth Amendment[3] protects against unreasonable searches and seizures. U.S. CONST. amend. IV. To suppress evidence because of an alleged Fourth Amendment violation, the defendant bears the initial burden of producing evidence that rebuts the presumption of proper police conduct. *Torres v. State*, 182 S.W.3d 899, 902 (Tex. Crim. App. 2005); *Ford v. State*, 158 S.W.3d 488, 492 (Tex. Crim. App. 2005). A defendant satisfies this burden by establishing that a search or seizure occurred without a warrant. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492. Once the defendant has made this showing, the burden of proof shifts to the State, which is then required to establish that the government agent conducted the search or seizure pursuant to a warrant or that the agent acted reasonably. *Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.

The Supreme Court has held that a detention is reasonable under the Fourth Amendment if the government agent reasonably suspects a person of

---

[3] Where, as in this case, the appellant has not separately briefed state and federal constitutional claims, we assume that the appellant claims no greater protection under the state constitution than that provided by the federal constitution. *Varnes v. State*, 63 S.W.3d 824, 829 (Tex. App.—Houston [14th Dist.] 2001, no pet.). Therefore, we will analyze De-Los-Santos's claim solely under the Fourth Amendment of the United States Constitution, following guidelines set by United States Supreme Court in interpreting the Fourth Amendment. *See State v. Guzman*, 959 S.W.2d 631, 633 (Tex. Crim. App. 1998).

engaging in criminal activity.[4] *Terry v. Ohio*, 392 U.S. 1, 22, 88 S. Ct. 1868, 1880 (1968); *Carmouche*, 10 S.W.3d at 328. Reasonable suspicion exists when, based on the totality of the circumstances, the officer has specific, articulable facts that when combined with rational inferences from those facts, would lead the officer to reasonably conclude that a particular person is, has been, or soon will be engaged in criminal activity. *Ford*, 158 S.W.3d at 492–93. This is an objective standard that disregards any subjective intent of the officer making the stop and looks solely to whether an objective basis for the stop exists. *Id*. at 492.

Therefore, in stopping vehicles for an investigative detention based on a traffic violation, the State need not prove that the detainee actually committed a traffic violation. *Drago v. State*, 553 S.W.2d 375, 377 (Tex. Crim. App. 1977); *Manyou v. State*, No. 05-05-00161-CR, 2006 WL 2664281, at *4 (Tex. App.—Dallas Sept. 18, 2006, pet. ref'd) (not designated for publication). The State must only show that the officer reasonably suspected that the driver was committing a traffic violation. *Woods*, 956 S.W.2d at 36; *Manyou,* 2006

---

[4] Because a routine traffic stop typically involves only a short, investigative detention, as opposed to a custodial arrest, we analyze traffic stops under the principles developed for investigative detentions set forth in *Terry v. Ohio*. 392 U.S. at 22, 88 S. Ct. at 1880; *see Berkemer v. McCarty*, 468 U.S. 420, 104 S. Ct. 3138 (1984); *Martinez v. State*, 236 S.W.3d 361, 369 (Tex. App.—Fort Worth 2007, no pet.).

8

WL 2664281, at *4; *Barrington v. State*, No. 02-06-00215-CR, 2007 WL 495174, at *2 (Tex. App.—Fort Worth, Feb. 15, 2007, no pet.) (mem. op.) (not designated for publication). If the State establishes reasonable suspicion, then the stop does not violate the Fourth Amendment even if, upon further investigation, it is discovered that no traffic violation actually occurred. *See Drago,* 553 S.W.2d at 377; *Manyou,* 2006 WL 2664281, at *4.

## B. De-Los-Santos's Traffic Stop Comported with the Fourth Amendment

Because it is undisputed that Officer McFerrin did not have a warrant when he pulled over De-Los-Santos, we look to the State's burden in showing the reasonableness of Officer McFerrin's detention of De-Los-Santos. *See Torres*, 182 S.W.3d at 902; *Ford*, 158 S.W.3d at 492.

De-Los-Santos argues that Officer McFerrin did not have reasonable suspicion to initiate the traffic stop because he did not verify his belief that one of the two license plate tag lights was out. The issue here, however, is not whether De-Los-Santos committed a traffic violation; rather, the issue is whether Officer McFerrin had reasonable suspicion to stop De-Los-Santos for a traffic offense. *See Drago,* 553 S.W.2d at 377; *Manyou,* 2006 WL 2664281, at *4.

Officer McFerrin testified that, as De-Los-Santos passed him, he noticed that one of the vehicle's tag light was not working. Officer McFerrin never wavered on the accuracy of his initial observation that the tag light was non-operational. Furthermore, De-Los-Santos did not elicit any testimony that Officer McFerrin was acting on pretext.

In addition to Officer McFerrin, the trial court heard testimony from Wylie, (the owner of the vehicle, a passenger at the time of the stop, and a friend of De-Los-Santos for almost a decade) that no one had ever before informed her of the faulty tag light. Wylie also testified that during the stop, she briefly stepped out of the vehicle and, from a "real quick" observation, thought that the disputed tag light was working. Wylie finally testified that both lights were working when she arrived home after the arrest.

Finally, the trial court heard testimony of a videographer hired by the defense who had enhanced the cruiser video. The expert testified that in his opinion the license plate tag light was working at the time of the stop. The expert wavered, however, during cross-examination and admitted that he was not 100% sure that the light was working when De-Los-Santos passed Officer McFerrin. The trial court also viewed the videotape of the detention recorded

10

by Officer McFerrin's patrol car's video camera. We likewise have review that tape.[5]

Because during a suppression hearing the trial court is the sole judge of the credibility of the witnesses and the weight of their testimony, the trial court could have determined that Officer McFerrin's testimony was more credible than Wylie's and the videographer's. *Ross*, 32 S.W.3d at 855; *Ballard*, 987 S.W.2d at 891. Furthermore, the trial court explicitly found that Officer McFerrin observed the vehicle driven by De-Los-Santos traveling in violation of the Texas Transportation Code by failing to have the license plate clearly illuminated and that the officer, therefore, had reasonable suspicion that a traffic offense was occurring when he initiated the traffic stop.[6]

De-Los-Santos relies on the *Kimball* case to argue that Officer McFerrin should have done more, such as turning off his headlights, to verify that one of

---

[5] The video does not show whether one of De-Los-Santos's license plate tag lights was out or not; the headlights from Officer McFarrin's patrol car so thoroughly illuminate the back of De-Los-Santos's vehicle that this fact cannot be ascertained from the video.

[6] Specifically, the trial court found that "[o]n May 19, 2006, at or around 9:00 p.m., Officer Patrick McFer[r]in . . . observed a brown Chevy Blazer traveling with no license plate tag-light." The trial court noted, "[u]pon conclusion of the hearing, this Court overruled [De-Los-Santos's] motion to suppress, finding by clear and convincing evidence that the officer had reasonable suspicion that a traffic offense was occurring when he initiated the traffic stop."

11

the license plate tag lights was not working. *Kimball v. State*, No. 06-03-00236-CR, 2004 WL 2715392, at *1 (Tex. App.—Texarkana 2004, no pet.) (mem. op.) (not designated for publication). This argument, however, overlooks our standard of review of the trial court's ruling. Because the trial court made an explicit finding of fact that the license plate tag light was not working at the time Officer McFerrin initiated the stop, our review is limited to determining whether the evidence, when viewed in the light most favorable to the trial court's ruling, supports that finding. *Kelly*, 204 S.W.3d at 818. Because it does, we cannot say that the trial court erred by denying De-Los-Santos's motion to suppress. We therefore overrule De-Los-Santos's sole issue.

## V. CONCLUSION

Having overruled De-Los-Santos's sole issue, we affirm the trial court's judgment.

PER CURIAM

PANEL F:   WALKER, J.; CAYCE, C.J.; and MCCOY, J.

DO NOT PUBLISH
TEX. R. APP. P. 47.2(b)

DELIVERED: April 17, 2008